LAWRENCE and another, Executors, vs. THE CITY OF JANESVILLE.

PLEADING. *(1) Complaint construed.*

TAXES: VALUATION OF PROPERTY. *(2) Valuation of moneys, etc., not sworn to: Right of assessor to raise it. (3) Remedy for excessive valuation by assessor.*

1. In an action to recover taxes paid upon personal property of an estate, consisting of bonds, mortgages and other evidences of debt, the complaint alleged that one of the executors prepared a statement of the personal property, upon a blank left with him by the assessors for that purpose, and "signed the oath thereto appended;" that in such statement, plaintiffs "stated the value of the average amount of bonds, mortgages, notes, tax certificates and other evidences of debt secured on real estate, also accrued interest on United States bonds," at $35,000; that the assessors accepted such statement without requiring either of the executors to make oath to the truth of any part thereof; that afterwards they raised the valuation of the property above described from $35,000 to $60,000; and that, "in so determining and stating the value of such property at the sum of $60,000, the said assessors arbitrarily disregarded the statement and valuation so made and delivered to them by plaintiffs, *and intentionally valued the same in accordance with a different rule or basis of valuation than that adopted and acted upon by them in their valuations of other*

Lawrence and another, Ex'rs, vs. The City of Janesville.

*property for taxation in said year."* The cause standing on demurrer to the complaint, this court regards the averment of an intentional valuation upon a different rule, etc., as merely a conclusion of the pleader from the facts previously stated, and holds the complaint insufficient.

2. While the tax-payer, by making oath to his valuation of his "moneys, notes, bonds, mortgages, or other securities," etc., may bind the assessors by such valuation, under sec. 1, ch. 78 of 1873, yet, where he delivers to the assessors a statement of such value not sworn to, they may, without offering to administer the oath, proceed to ascertain the true value by other means.

3. Where the assessor, in the absence of such sworn statement, puts an excessive valuation upon the tax-payer's moneys and securities, the remedy is by application to the board of review, under sec. 25, ch. 130 of 1868.

RYAN, C. J., dissents.

APPEAL from the Circuit Court for *Rock* County.

Action to recover moneys paid (under protest and to prevent a threatened sale) as taxes upon the personal property of plaintiffs' testator. After alleging the death of Charles H. Conrad, a resident of the city of Janesville, testate, the appointment of plaintiffs as his executors by the will, the probate of said will, the issue of letters testamentary to the plaintiffs, etc., and also the appointment, qualification, etc., of certain persons named as assessors for said city, the complaint alleges that afterwards said assessors delivered to the plaintiff *C. B. Conrad*, as one of such executors, a blank form to be used by plaintiffs in making a statement of the personal property belonging to the estate of their testator, and liable to taxation in said year 1876, and requested plaintiffs to make such statement; that thereupon, and some time in June, 1876, plaintiffs prepared such statement, and "said *C. B. Conrad* signed the oath thereto appended;" that in and by such statement plaintiffs stated the value of the "average amount of bonds, mortgages, notes, tax certificates, and other evidences of debt secured on real estate, also accrued interest on United States bonds," at $35,000; that thereupon the plaintiff *Lawrence* delivered said statement to said assessors, and the latter accepted the same as satisfactory, without requiring or request-

ing that any one of the plaintiffs should make oath to the truth of the same or of any statement therein; that afterwards the assessors added to said statement certain figures in the column headed "Valuation by assessors" (as shown by an exhibit annexed to the complaint), and made their assessment roll for said year in accordance with the valuation so made by said assessors; that the same property which plaintiffs, in and by said statement, valued at $35,000, was by the assessors, in the manner aforesaid, valued at $60,000, and that such property consisted wholly of notes, bonds and mortgages given by individuals to secure individual indebtedness, and one item or sum not exceeding in value $1,575, which consisted of bonds of said city of Janesville and accrued interest thereon; "that, in so determining and stating the value of said property at the sum of $60,000, said assessors arbitrarily disregarded the statement and valuation so made and delivered to them by these plaintiffs, and intentionally valued the same in accordance with a different rule or basis of valuation than that adopted and acted upon in their valuations of other property for taxation in said year;" that plaintiffs, as such executors, had no property consisting, and no part of said estate consisted, of United States bonds or accrued interest thereon, or of bonds or securities, or accrued interest on bonds or securities, of any other kind than as hereinbefore stated, except $1,000 in the capital stock of a certain national bank, the taxes on which were paid by the bank; that afterwards, prior to August 1st, 1876, said assessment roll was delivered to the clerk of said city, who prepared therefrom a tax roll with the same valuations of said personal property as were found in the assessment roll, and apportioned and carried out the city and ward taxes against the same in accordance with said valuations, at the aggregate sum of $734.33; and that, on the valuation of said property made by plaintiffs as aforesaid, such taxes would not have amounted to more than $432.80. The complaint then contains the necessary allegations to show that plaintiffs, after having

duly tendered $432.80, had been compelled to pay said sum of $734.33 to said treasurer for the benefit of said city; and it demands judgment for the whole amount, with interest, etc.

Defendant demurred to the complaint as not stating a cause of action; and, from an order sustaining the demurrer, plaintiffs appealed.

The cause was submitted on the brief of *Pease & Ruger* for the appellant, and that of *H. McElroy* for the respondent.

For the appellants it was argued, 1. That the averment of the complaint that the assessors intentionally valued the property in question " in accordance with a different rule or basis of valuation than that adopted and acted upon by them, in their valuations of other property for taxation in said year," must be taken as true on demurrer, and shows the tax to be void. *Knowlton v. Supervisors*, 9 Wis., 410; 15 id., 600; *Marsh v. Supervisors*, 42 id., 502, and cases there cited. 2. That the tax was void for the further reason that the assessors disregarded the owners' valuation of the property, and arbitrarily valued it at a greater sum. The assessors did not, as they were authorized to do by the second section of the statute (ch. 78 of 1873), add to the *aggregate valuation* on account of *other* property, i. e. property *not discovered and valued in the mode prescribed in the first section;* but they added to the valuation of the average amount of moneys, notes, etc., in excess of the average amount of indebtedness, contrary to the plain requirement of the statute that the average amount of property of this class, *as determined by the tax-payer*, should be assessed for taxation. Ch. 88, Laws of 1870; *Matheson v. Mazomanie*, 20 Wis., 191; *White v. Appleton*, 22 id., 639; *Ketchum v. Mukwa*, 24 id., 303; *Town of Wauwatosa v. Gunyon*, 25 id., 271; *Phillips v. Stevens Point*, id., 594; *Matteson v. Rosendale*, 37 id., 254; *Hersey v. Supervisors*, 37 id., 75; *Biss v. New Haven*, 42 id., 605; *Marsh v. Supervisors*, id., 502.

COLE, J.   It is insisted, in this case, that the facts stated in the complaint show that the tax upon the personal property was void, because the assessors, disregarding the valuation of such property made by one of the executors, placed a higher value upon it for purposes of taxation.   The property consisted almost entirely of " bonds, mortgages, notes, tax certificates and other evidences of debts secured on real estate."   In the statement furnished by the executor, the aggregate amount of this personal property was placed at $35,000, and the assessors increased it to $60,000.   It is claimed that the assessors had no authority in law for thus increasing the aggregate valua· tion made by the executor, and that the attempt to do so invalidated the tax.   We cannot assent to the correctness of this position.   By sec. 1, ch. 78, Laws of 1873, the board of assessors is required to place opposite the name of each person liable to assessment on personal property, the aggregate valuation of all personal property owned by such person, or which he has in charge as agent or trustee, and which is liable to taxation; such aggregate valuation to be fixed according to the best judgment and belief of the board.   " To determine the amount of personal property, except moneys, notes, bonds, mortgages or other securities, owned by any person liable to taxation, said board of assessors, or any of them, may examine such person under oath as to all items of personal property, as aforesaid, owned or possessed by him or her, and the true value thereof.   And should any person refuse to testify under oath before said board of assessors or any one of them, as to the items of value of his or her property, or should the assessors or any one of them, or the board of review, desire further evidence, they may call upon other persons as wit- nesses to give evidence under oath as to the items and value of the personal property of such persons.   In determining the amount of moneys, notes, bonds, mortgages or other secu- rities owned or held by any person, and the amount of indebt- edness which any person may be entitled to deduct from

credits, such person shall be required to make a statement thereof under oath, giving the average amount of such moneys, notes, bonds, mortgages or other securities owned or held by him or her, and the average amount of indebtedness which he or she may be entitled to deduct from such credits; . . . . and the average amount of such moneys, notes, bonds, mortgages or other securities for such year, determined as aforesaid, shall be assessed for taxation." By the next section, the assessors are authorized, after arriving at the total valuation of all articles of personal property which they shall be able to discover as belonging to any person, "if they have reason to believe that such other person has other personal property, consisting of interest accrued on bonds or other securities which are exempt by law from taxation, or any other thing of value liable to taxation, they shall add to such aggregate valuation of personal property, an amount which in their judgment will render such aggregate valuation a just and equitable valuation of all the personal property liable to taxation belonging to such persons." These are the provisions specially applicable to the question to be decided. Now it is claimed that the facts stated show that the assessors did not add to the aggregate valuation on account of *other* property, or property not discovered and valued in the mode prescribed in the first section above quoted, but arbitrarily added to the valuation of the average amount of moneys, etc., as determined by the executor in the statement made by him. This, it is said, was in violation of law, and rendered the tax collected void.

In this case the statement made by the executor was not *sworn to;* it did not, therefore, bind the judgment of the assessors, who were at liberty, in the absence of such sworn statement, to resort to any means of information within their reach to determine the amount of moneys, notes, etc., belonging to the estate, which should be assessed for taxation. Where the statement of the tax-payer is made under oath as to the amount of moneys, notes, etc., and the amount of indebtedness

Lawrence and another, Ex'rs, vs. The City of Janesville.

which he is entitled to deduct therefrom according to the basis prescribed, it controls as to the amount to be assessed. This is the underlying principle of the cases of *Matheson v. The Town of Mazomanie*, 20 Wis., 191; *White v. Appleton*, 22 id., 639; *Ketchum v. The Town of Mukwa*, 24 id., 303; *Town of Wauwatosa v. Gunyon*, 25 id., 271; and *Phillips v. The City of Stevens Point*, id., 594; which were decided under provisions quite analogous to sec. 1, ch. 78. It is true, it is alleged that the statement delivered to the assessors was accepted as satisfactory, without the assessors requiring that it should be sworn to. But we cannot see that this really aids the complaint; for it is only where such statement is sworn to, that there is any ground for saying that it is made final as to the amount of moneys, notes, etc., which shall be assessed for taxation. Besides, it does not appear that the average amount, as increased by the assessors, was above the true value of the property. The fact, therefore, that the assessors disregarded the statement and valuation made by the executor, amounts to nothing, if that statement is not made by the statute final upon the question of valuation, and the property was not valued too high. Besides, if the assessors increased the valuation too high, the plaintiffs had an ample remedy under sec. 25, ch. 130, Laws of 1868,[1] to have the same reduced by the board of review. So, in any aspect of the case, we must affirm the order sustaining the demurrer.

*By the Court.*— Order affirmed.

RYAN, C. J. took no part.

---

[1] The provisions of that section are as follows: " Any person who thinks the aggregate valuation of his personal property, as fixed by the board of assessors, too high, may appear before the board of review at their annual meeting, and, under oath, state the true aggregate valuation of all personal property upon which he is liable to taxation, according to the provisions of this act; and if the board of review shall be satisfied of the truth of such statements, the valuation so fixed by him shall be taken by the board of review as the true aggregate valuation of his personal property."— REP.

A motion by the appellant for a rehearing was denied.

COLE, J.   I. In support of the motion for a rehearing, it is said the court failed to notice the argument founded on the allegation that the tax was void for the reason that the assessors intentionlly valued the property in question "in accordance with a different rule or basis of valuation than that adopted and acted upon by them in their valuations of other property for taxation in said year."   Preceding this allegation in the complaint, certain facts were stated, which the court certainly assumed, as it had the right to assume, were relied on to show wherein the assessors departed from or violated the rule of uniformity.   If the pleader did not intend to show by these facts that the rule of valuation as to this property differed from that acted upon in assessing other property, it is difficult to understand why they were set out in the complaint at all.   We supposed they were stated to show wherein the proceedings were illegal.   We deemed them insufficient to sustain that claim.   For, to take an analogous case, suppose a party brings an action to set aside a contract on the ground of fraud, setting forth in his complaint certain specific facts to show the fraud, and then, as a conclusion founded on those facts, alleges that the contract is void.   Would a court, on demurrer to the complaint, after deciding that the facts did not establish or show fraud, still hold the complaint good on the general allegation that the contract was void?   We apprehend not.   Now, if the fact that the assessors valued the property higher than the executor did in the statement which he furnished the assessors, was not relied on to show a violation of the rule of uniformity, why was it set forth in the complaint at all?   This is really the only fact stated to show that the assessor adopted a different rule of valuation in respect to this property from that acted upon as to other property.   And if the learned counsel will refer to his original brief, he will observe that this fact was the only thing there relied on to

show that the tax collected was illegal and should be refunded. There is surely nothing unfair in meeting the precise position which counsel take in the argument of causes, as we did when considering the allegations of this complaint. We certainly did not intend to impute to the pleader any other intent than that fairly " inferable from the language used."

II. The second position relied on as showing the tax invalid, it is conceded, was not fully stated in the former brief. It is, that the tax is void for the reason that the assessors did not require the plaintiffs, or one of them, to make a statement as to the value of the property under oath, as the statute directs, but, having accepted the unsworn statement without offering to administer the oath, proceeded to determine its value in another way and by other sources of information. The executors had an undoubted right to conclude the judgment of the assessors as to the value of this class of property, by themselves fixing its value under oath. This was a right which the law gave them. But if they did not see fit to render a sworn statement as to its value, the assessors had to determine its value in the best way they could. We presume it is not an unfrequent occurrence for tax-payers, from choice, to furnish assessors with unsworn statements of this kind of property, leaving it to the assessor, if dissatisfied with the valuation given, to get at the proper valuation in the best manner possible. But still we do not think that such a mode of assessment renders the tax void. It is the duty of the tax-payer to make oath to his statement, if he wishes it to be conclusive upon the assessors. The motion for a rehearing must be denied.

RYAN, C. J. I was not present when this cause was heard. But I have carefully examined the case, the briefs on the hearing and on the motion for rehearing, and the opinion of the court. And I am compelled to dissent from the overruling of the motion, on two grounds:

I. I cannot but think the provision of sec. 1, ch. 78 of 1873, in relation to the assessment of moneys, notes, bonds, mortgages or other securities, to be mandatory, and therefore jurisdictional to the assessment; certainly so, unless the tax-payer refuses to make the statement and take the oath. It provides that, in determining the amount, the tax-payer *shall* be required, that is, by the assessors, to make a statement thereof, and of the average value thereof, under oath. Here is a marked difference of language from a previous clause of the section, in regard to all other personal property to be taxed, where the tax-payer *may* be examined, under oath, as to the items and value; that is, at the discretion of the assessors.

And there is reason for the distinction. For other taxable personal property is generally, though not always, open to inspection and valuation of the assessors; but money and securities for money are generally not so. Therefore the assessors may, when necessary, appeal to the conscience of the tax-payer in regard to other personal property, but must appeal to it in the first instance in regard to money and securities. That appears to me to be the plain reading of the statute.

In the present case, one of the executors appears to have tendered the oath to the assessors, which it was the duty of the assessors, or one of them, to have taken. If they avoided to take it, by way of excuse for enlarging the amount, they violated the statute, and committed a wrong upon the executors.

In my humble judgment, the cases cited in the opinion of the court support my dissent, and not the opinion.

II. There is an averment in the complaint that the assessors intentionally valued the property by a different rule of valuation than that adopted and acted upon by them in their valuation of other property. It is true that this averment immediately follows one in regard to the disregard of the statement of money and securities rendered by the exec-

utors, and appears to be contained in the same sentence. But it is an independent averment, on a different subject matter; and is none the less so because it is separated from the preceding by a comma and not by a period.

The averment is certainly very general. But if it be defective in that respect, the remedy against it was by motion to make it more definite and certain, and not by demurrer.

If there were different rules of valuation, one of them at least was not the statutory rule. And all the late cases hold that a difference of rule avoids the whole assessment.

For these reasons I think the appeal should be reheard.

*By the Court.* — Motion for rehearing denied.